**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

WILLIE GREEN,

Plaintiff,

v. Case No. 8:25-cv-579-KKM-LSG

GALENCARE INC., d/b/a HCA FLORIDA BRANDON HOSPITAL, and UNIVERSAL PROTECTION SERVICE, LLC, d/b/a ALLIED UNIVERSAL SECURITY SERVICES, LLC,

Defendants.

---

**ORDER**

Proceeding pro se, Willie Green moves to voluntarily dismiss this action without prejudice under Federal Rule of Civil Procedure 41(a)(2). Green MTD (Doc. 106). Defendant Galencare, Inc., does not oppose dismissal on the conditions that, if Green wishes to refile his complaint, he must do so in the United States District Court for the Middle District of Florida and pay the costs and fees incurred by Galencare in this action. Galencare Resp. (Doc. 108). Defendant Allied Universal Security Services did not respond. For the reasons below, I grant Green's motion to dismiss subject to those two conditions.

# I. BACKGROUND

## A. Factual Background

In September 2022, Green slipped and fell, causing "head trauma and lower back injuries." 3d Am. Compl. (Doc. 76) ¶ 10. He then went to the hospital operated by Galencare in Temple Terrace, Florida, where a physician ordered multiple CT scans that "showed no acute or emergent findings." *See id.* Green was told "to return if his symptoms persisted or worsened." *Id.*

On March 9, 2023, Green returned to the hospital complaining of "worsening symptoms," including "dizziness, severe headaches, severe spinal pain, blurred vision, and vomiting," where Dr. Akeem Flemister evaluated him. *See id.* ¶¶ 45–46. Green requested new CT imaging, which Dr. Flemister denied because there was "no new traumatic injury," *id.* ¶ 11, and further imaging was not indicated, *see* Medical Records (Doc. 13) at 10–11. The medical records state that Dr. Flemister offered to conduct an x-ray and that Green declined this request, but Green maintains that he never declined any kind of imaging. *Contrast* Medical Records at 11, *with* 3d Am. Compl. ¶ 13. Green alleges that Dr. Flemister's decision was unsupported and that Dr. Flemister "use[d] scare tactics and [Green's] race to discourage his repeated request[s] for imaging." 3d Am. Compl. ¶ 12.

During the visit, Dr. Flemister referred Green to an outpatient orthopedist and assured Green that the orthopedist would see him despite his

lack of insurance. *See* Medical Records at 11; 3d Am. Compl. ¶ 65. Shortly after Green was discharged, he "collapsed at home, experiencing a sudden failure in his lower back." 3d Am. Compl. ¶ 64. He then tried to schedule an appointment with the orthopedist, who refused because Green was uninsured. *Id.* ¶ 16.

On April 12, 2023, Green sent Galencare a pre-suit complaint asserting that the hospital had violated the Emergency Medical Treatment and Labor Act (EMTALA) and seeking $200,000 in compensation. *Id.* ¶ 17; (Doc. 1-3) at 4. Galencare denied the claim, and hospital management asked the hospital's security manager, an employee of Allied (a "private security provider" that contracts with Galencare), to send an alert warning staff about Green. *See id.* ¶¶ 17, 20, 22. The security manager sent the alert via an internal portal to security personnel "across multiple facilities throughout the state." *Id.* ¶ 23. The alert warned that Green was unhappy with his medical care and directed staff to post it in discrete locations. *See id.* The security manager also sent out an unredacted scan of Green's driver's license, *id.* ¶ 24, and a printout of the alert along with the scan of Green's driver's license that was posted on the hospital's "Be on the Lookout" (BOLO) wall in the hospital lobby, *id.* ¶ 25. Green's own photographs show that the printout was behind a security desk, though still visible to the public. *See id.* at 12–13. This printout remained on the wall for over a year despite Green's demands to have it removed. *Id.* ¶¶ 31, 34.

Green alleges that, within two months of his pre-suit demand, he was the victim of identity theft, including "fraudulent attempts to open credit cards" and the submission of a false tax return. *See id.* ¶ 41. Green has "received unexplained medical bills for services he never received and experienced loss of employment and income due to failed identity verification procedures." *Id.* ¶ 41. In November 2023, Green's social security number and a photograph of the BOLO printout were posted on social media, "reaching over 35,000 combined followers." *Id.* ¶ 26. Green does not explain who might have posted it or how the account obtained his social security number, which was not a part of the BOLO alert. *See generally id.*

### B. Procedural Background

On March 10, 2025, Green filed a 100-page, 456-paragraph complaint naming Galencare and Allied and alleging violations of EMTALA, the Driver's Privacy Protection Act, and Title VI of the Civil Rights Act of 1964, negligence, breach of implied contract, invasion of privacy, defamation by implication, vicarious liability, breach of confidence, and civil conspiracy. Compl. (Doc. 1) ¶¶ 246–455. Green amended the complaint before the defendants responded. Am. Compl. (Doc. 11).

Unaware of the amended complaint, Galencare moved to dismiss the original complaint for failure to state a claim. Galencare MTD (Doc. 16). Galencare then moved to dismiss the amended complaint. Galencare 2d MTD

(Doc. 32). Allied also moved to dismiss the amended complaint. Allied MTD (Doc. 25). Green then moved to "strike" these motions to dismiss.[1] (Docs. 33, 35, 36, 37). I denied Galencare's second motion to dismiss and Allied's motion to dismiss without prejudice for noncompliance with Local Rule 3.01(g)'s conferral requirement and denied Green's motions to strike as moot. (Doc. 40). Galencare and Allied amended their motions to certify compliance with Local Rule 3.01(g). (Docs. 39, 42).

While Galencare's and Allied's motions to dismiss were pending, Green sought leave to amend again to, among other things, "[a]ssert two new causes of action," "[i]ncorporate newly discovered evidence," and "[c]larify and reorganize existing claims." (Doc. 47) at 6–8. I gave Green leave to do so. (Doc. 54). Green then filed a 92-page, 260-paragraph second amended complaint, 2d Am. Compl. (Doc. 65), thereby mooting Galencare's and Allied's amended motions to dismiss, *see* (Doc. 68).

Galencare and Allied next moved to dismiss Green's second amended complaint. (Docs. 69, 70). Green responded by seeking to amend yet again "to add a prayer for punitive damages to the existing counts." (Doc. 72) at 1. I granted Green's motion, and Green then filed a 91-page, 260-paragraph third

[1] Rule 12(f) of the Federal Rules of Civil Procedure provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." It does not apply to motions. *See Polite v. Dougherty Cnty. Sch. Sys.*, 314 F. App'x 180, 184 n.7 (11th Cir. 2008).

amended complaint, 3d Am. Compl. (Doc. 76), thereby mooting Galencare's and Allied's motions to dismiss, *see* (Doc. 75).

Galencare and Allied next moved to dismiss Green's third amended complaint. (Docs. 79, 81). Green moved to strike these motions to dismiss, (Docs. 84, 89, 90), and, after missing the response deadline, moved for leave to respond to the motions out of time, (Doc. 92). I denied Green's motions to strike and afforded him leave to respond. (Doc. 97). Green did so. (Docs. 100, 101).

I granted in part and denied in part Galencare's and Allied's motions to dismiss the third amended complaint. Order on MTD (Doc. 102). Specifically, I dismissed without prejudice Counts I–III, Count IV to the extent it depends on intentional torts, Count VII to the extent it depends on the incorporation of privacy laws, Counts VIII–XII, and Count XV, and I dismissed with prejudice Counts V and VI. *Id.* at 38–39. I then directed Galencare and Allied to file a responsive pleading to the remaining counts (Count IV, VII, XIII, and XIV). *Id.*

After Galencare and Allied answered Green's third amended complaint, Green moved to voluntarily dismiss without prejudice the remainder of the action. Green MTD. Galencare responded to Green's motion to dismiss, urging the Court to dismiss Green's action "but only upon the condition that should [Green] seek to refile his complaint, he must pay the costs and fees incurred by [Galencare] and file the new complaint in the Middle District of Florida." Galencare Resp. at 2–3.

## II. ANALYSIS

Green moves to voluntarily dismiss this action because he "has elected not to continue litigating the claims and portions of claims left pending by the Court's Dismissal Order." Green MTD at 2. Galencare agrees that this Court should dismiss Green's action but only if this Court imposes conditions to deter gamesmanship and the future "waste" of Galencare's resources if Green refiles his claims in federal or state court. Galencare Resp. at 2. Allied has not responded. I agree that voluntary dismissal with reimbursement and venue-restriction conditions is proper.

### A. Voluntary Dismissal Is Proper

A district court has "broad discretion in determining whether to allow a voluntary dismissal under Rule 41(a)(2)." *Pontenberg v. Bos. Sci. Corp.*, 252 F.3d 1253, 1255 (11th Cir. 2001) (per curiam) (citing *McCants v. Ford Motor Co., Inc.*, 781 F.2d 855, 857 (11th Cir. 1986)). Unlike Rule 41(a)(1), which permits a plaintiff to voluntarily dismiss his case without a court's leave, Rule 41(a)(2) "is primarily [intended] to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions." *McCants*, 781 F.2d at 856 (quoting *Alamance Indus., Inc. v. Filene's*, 291 F.2d 142, 146 (1st Cir. 1961)). So, when "considering a motion for dismissal without prejudice," a district court "should bear in mind principally the interests of the defendant, for it is the defendant's position that the court should protect." *Id.*

(citing *LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601, 604 (5th Cir. 1976)); *accord Pontenberg*, 252 F.3d 1253 at ("The crucial question to be determined is[:] Would the defendant lose any substantial right by the dismissal[?]" (quoting *Durham v. Fla. E. Coast Ry. Co.*, 385 F.2d 366, 368 (5th Cir. 1967))). "[I]n most cases, a voluntary dismissal should be granted unless the defendant will suffer clear legal prejudice, *other* [*than*] *the mere prospect of a subsequent lawsuit*, as a result." *Pontenberg*, 252 F.3d at 1255 (quoting *McCants*, 781 F.2d at 856–57).

Here, Galencare and Allied have not objected to voluntary dismissal or identified any legal prejudice or loss of substantive right that could result. Nor has this Court identified one. Voluntary dismissal is therefore proper.

**B. Reimbursement and Venue-Restriction Conditions Properly Apply to Refiling**

When a court allows a voluntary dismissal under Rule 41(a)(2), it "must 'weigh the relevant equities and do justice between the parties in each case, imposing such costs and attaching such conditions to the dismissal as are deemed appropriate.' " *Pontenberg*, 252 F.3d at 1256 (quoting *McCants*, 781 F.2d at 857). A court may condition dismissal upon, among other things, the plaintiff's payment of costs, expenses, and fees immediately or upon refiling. *See LeCompte*, 528 F.2d at 603; *Emergency Recovery v. Hufnagle*, 77 F.4th 1317, 1329–30 (11th Cir. 2023) (citing *Pontenberg*, 252 F.2d at 1260) (explaining that a district court has the "broad equitable discretion" to impose

immediate payment of costs and fees as a condition of voluntary dismissal and that delaying such payments can also adequately protect defendants). It may also condition dismissal upon "other terms designed to reduce inconvenience to the defendant." *LeCompte*, 528 F.2d at 603 (citations omitted).

Galencare proposes that, "should [Green] seek to refile his complaint, he must pay the costs and fees incurred by [Galencare in this action] and file the new complaint in the Middle District of Florida." Galencare Resp. at 2–3. Galencare argues that these conditions are warranted because, among other things, Green "sought to amend each and every time that [Galencare and Allied] moved to dismiss – seemingly in an effort to forestall an actual ruling on the validity of [Green's] claims," and that Green moved for voluntary dismissal without explanation shortly after the Court narrowed his Third Amended Complaint and "the parties and the Court [had] waste[d] substantial resources." *See id.* at 2.

Galencare's proposed conditions are appropriate. Green filed his 100-page, 456-paragraph, fifteen-count complaint in March 2025 and thrice amended it in the seven months that followed. *See* Am. Compl. (142 pages); 2d Am. Compl. (92 pages); 3d Am. Compl. (91 pages). These "amendments proceedings," as Green calls them, *see* Green MTD at 2, caused Galencare and Allied to spend months filing responsive motions and pleadings. And, after Galencare and Allied finally answered Green's operative complaint more than

seventeen months after Green brought this action, (Docs. 104, 105), Green days later moved for voluntary dismissal without any explanation other than that he "has elected not to continue litigating the claims and portions of claims left pending by the Court's Dismissal Order," *see* Green MTD at 2.

Given these dilatory and potentially abusive litigation tactics, I agree with Galencare that dismissing this action without conditions could very well expose Galencare and Allied to another federal or state court action at unfair cost. *See* Galencare Resp. at 2. The reimbursement and venue-restriction conditions are appropriately tailored to address these concerns. First, the condition that Green must reimburse Galencare's and Allied's costs and attorney's fees from this action if he refiles after voluntary dismissal will protect Galencare's and Allied's interests without impairing Green's right to renew this action and will impose less burden on Green than requiring him to pay before voluntary dismissal. Second, the condition that Green must refile in the Middle District of Florida any claims against Galencare or Allied arising out of the same facts and circumstances as this action will deter forum shopping and ensure that Green cannot circumvent the first condition by refiling his action in state court.[2]

[2] Galencare argues that it cannot rely on the reimbursement condition alone because "the Eleventh Circuit has held that the district court is powerless to stay a refiled action until the plaintiff has paid the costs or expenses of that first litigation if the plaintiff refiles his action in state court." Galencare Resp. at 7 (citing *Sargeant v.*

To be clear, Green still has the legal right to pursue claims arising out of the same facts at issue here. If he does so, however, he must pay the costs and fees incurred by Galencare and Allied in this action and bring those claims in this federal court.

## IV. CONCLUSION

The following is **ORDERED**:

1. Green's Motion for Voluntary Dismissal and Entry of Final Judgment, (Doc. 106), is **GRANTED** subject to conditions.
2. The Clerk is directed to enter final judgment by separate document, which shall read: "Judgment is entered in favor of Galencare, Inc., and Allied Universal Security Service, LLC, on Counts V and VI. Counts I–III, Count IV to the extent it depends on intentional torts, Count VII to the extent it depends on incorporation of privacy laws, Counts VIII–XII, and Count XV were previously dismissed without prejudice. (Doc. 102). The remainder of the action, consisting of Count IV's and VII's remaining theories of liability, Count XIII, and Count XIV, is dismissed without prejudice, subject to the following conditions: If, at any point in the future, Green files any action

---

*Hall*, 951 F.3d 1280, 1281 (11th Cir. 2020)). But *Sargeant* pertained to Rule 41(d), expressly distinguished Rule 41(a)(2), *see* 951 F.3d at 1285 n.3, and did not discuss whether an order enforcing the conditions of a voluntary dismissal falls within one of the Anti-Injunction Act's "limited exceptions," *id.* at 1284.

against Galencare, Inc., or Allied Universal Security Services, LLC, that arises out of the same facts and circumstances at issue in this action, Green must do so in the United States District Court for the Middle District of Florida and must pay the fees and costs incurred by Galencare and Allied in defending this case."

3. The Clerk is further directed to **TERMINATE** any pending motions, hearing, and deadlines and to **CLOSE** this case.

**ORDERED** in Tampa, Florida, August 24, 2026.

Kathryn Kimball Mizelle
United States District Judge